**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

KORY D.,[1]

Plaintiff,

v.                                                      Case No.: 1:20-cv-3571-RMM

KILOLO KIJAKAZI,[2]
Acting Commissioner of Social Security,

Defendant.

**MEMORANDUM OPINION AND ORDER**

Plaintiff Kory D. ("Mr. D.") brings this action under a provision of the Social Security

Act, 42 U.S.C. § 405(g) (the "Act"), seeking review of a decision of the Commissioner of Social

Security (the "Commissioner") to deny his claim for disability insurance benefits.  District Judge

Christopher R. Cooper referred this matter to the undersigned for all purposes and trial upon the

parties' consent to proceed before a magistrate judge.  *See* Aug. 11, 2021 Min. Order; Aug. 11,

2021 Referral Entry.  Pending before the Court are Mr. D.'s Motion for Judgment of Reversal,

ECF No. 18, and the Commissioner's Motion for Judgment of Affirmance, ECF No. 19.  Having

---

[1] Plaintiff's name has been partially redacted in keeping with the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States. *See* Mem. from Hon. Wm. Terrell Hodges, Chair, Comm. on Ct. Admin. & Case Mgmt., to Chief Judges of the U.S. Cts. of Appeals, Chief Judges of the U.S. Dist. Cts., Clerks of the U.S. Cts. of Appeals, and Clerks of the U.S. Dist. Cts. (May 1, 2018), *available at* https://www.uscourts.gov/sites/default/files/18-ap-c-suggestion_cacm_0.pdf.

[2] Kilolo Kijakazi became Acting Commissioner of Social Security on July 9, 2021. Pursuant to Federal Rule of Civil Procedure 25(d) and the last sentence of 42 U.S.C. § 405(g), Ms. Kijakazi is substituted for Andrew Saul as the Defendant in this case.

reviewed the Administrative Record,[3] the parties' briefs,[4] and the relevant law, the Court

**DENIES** Mr. D.'s Motion for Judgment of Reversal and **GRANTS** the Commissioner's Motion

for Judgment of Affirmance, for the reasons set forth below.

## BACKGROUND

Mr. D. applied to the Social Security Administration (the "SSA") for disability insurance

benefits on February 13, 2018, alleging a disability onset date of May 15, 2015.[5]  *See* AR 26,

174–79.  At the time of his application, Mr. D. was forty-six years old and living in the

Philippines with his eight-year-old daughter and her mother.  *See* AR 49–50, 174–76.  He is a

high school graduate and veteran of the United States Army, and has previous work experience

in information technology.  *See* AR 34, 47–48, 57, 243–53.  He has been diagnosed with knee

osteoarthritis and degenerative joint disease.  *See* AR 29, 89–90, 473–76.

Mr. D.'s application for benefits was denied at both the initial and reconsideration levels

of review.  *See* AR 104–08, 111–16.  An administrative hearing was held before ALJ Jesse J.

---

[3] Page citations to the Administrative Record, ECF No. 13 ("AR"), refer to the running pagination at the lower right margin.

[4] The relevant briefs are: Pl.'s Mem. in Supp. of Mot. for J. Reversal ("Pl. Mem."), ECF No. 18; Def.'s Mem. in Supp. of Mot. for J. Affirmance & Opp'n to Pl.'s Mot. for J. Reversal ("Def. Mem."), ECF No. 19 (also filed at ECF No. 20); and Pl.'s Reply in Supp. of Mot. for J. Reversal & Opp'n to Def.'s Mot. for J. Affirmance ("Pl. Reply"), ECF No. 22 (also filed at ECF No. 23).  Throughout this Memorandum Opinion, page citations to documents in the record other than the AR, *see supra* note 3, refer to the document's original pagination, unless the page is designated with an asterisk (e.g., *1), in which case the reference is to the pagination assigned by PACER/ECF.

[5] Mr. D. previously filed an application for benefits on March 21, 2016, alleging that his disability began May 15, 2015.  *See* AR 26, 172–73.  That initial application was denied on August 1, 2016, without further appeal.  *See* AR 97–101.  When reviewing the application at issue here, the Administrative Law Judge ("ALJ") found no good cause to reopen Mr. D.'s prior application, and held that the earliest possible onset date for his current application was thus August 2, 2016—the day after his prior application was denied.  *See* AR 26.

Pease ("ALJ Pease") by telephone on June 4, 2020.  *See* AR 42, 135.  On June 23, 2020, ALJ

Pease issued a decision (ALJ Pease's "decision") in which he concluded that Mr. D. was not

disabled under the Act and was thus ineligible for social security benefits.  *See* AR 26–36.  The

Appeals Council denied Mr. D.'s request for review, making ALJ Pease's decision the

Commissioner's final decision.  *See* AR 6–9.  Mr. D. now asks this Court to reverse ALJ Pease's

decision, or remand this matter to the SSA for a new administrative hearing pursuant to 42

U.S.C. § 405(g).  *See generally* Pl. Mem.

## I.      Legal Framework

To qualify for benefits under the Act, a claimant must demonstrate a disability that

renders him unable to "engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment . . . which has lasted or can be expected to last for a

continuous period of not less than 12 months."  42 U.S.C. §§ 423(a), 423(d)(1)(A), 1382(a)(1),

1382c(a)(3)(A).  An applicant must support his claim with "[o]bjective medical evidence."  *Id.* §

423(d)(5)(A).

The Commissioner uses a five-step process to determine whether a claimant is disabled

under the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Butler v. Barnhart*, 353 F.3d 992,

997 (D.C. Cir. 2004) (describing each step).  At step one, the claimant must show that he is not

engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  At step

two, the claimant must show that he has a "severe medically determinable physical or mental

impairment," or a combination of severe impairments, that meets certain duration requirements

under the regulations.  *Id.* § 416.920(a)(4)(ii).  At step three, the Commissioner must determine

whether the claimant's impairment or impairments meet or equal an impairment in the

Commissioner's Listings maintained at 20 C.F.R. pt. 404, subpt. P, app. 1.  *Davis v. Berryhill*,

272 F. Supp. 3d 154, 166 (D.D.C. 2017).  If the claimant's impairment is listed, or if his

impairments together "equal" an impairment in the Commissioner's Listings, the Commissioner

will conclude that the individual is disabled and end her inquiry.  20 C.F.R. §§ 404.1520(a)(4),

416.920(a)(4); *see also Petty v. Colvin*, 204 F. Supp. 3d 196, 200 (D.D.C. 2016).

A claimant is not necessarily precluded from receiving benefits if his impairments do not

meet or equal any entry in the Listings.  The Commissioner must next assess the claimant's

residual functional capacity ("RFC").  *See* 20 C.F.R. §§ 404.1420(a)(4), 404.1520(e),

416.920(a)(4), 416.920(e).  The claimant's RFC measures what he "can do in a work setting"

despite his physical and mental limitations.  *Id.* § 404.1545(a)(1).  The RFC is then used to

determine, at step four, whether the claimant's impairments prevent him from performing "past

relevant work," *id.* §§ 404.1520(a)(4), 416.920(a)(4), and at step five, whether the claimant can

perform other work that exists in the national economy consistent with the claimant's RFC, age,

education, and work experience.  *Id.*; *see also Butler*, 353 F.3d 997.  If an individual's claim fails

at either of these steps, the Commissioner will conclude that the individual is not disabled and

deny the claimant's benefits request.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

## II.     Mr. D.'s Medical History and Opinion Evidence

Mr. D.'s medical records indicate that he suffers from an array of medical conditions,

including osteoarthritis and degenerative joint disease in both knees, hypertension, sleep apnea,

and gastroesophageal reflux disease.  *See* AR 29.  He also suffers from two mental health

conditions: major depressive disorder and adjustment disorder.  *Id.*  This Opinion will focus on

Mr. D.'s knee conditions, which the parties focused on in their briefing.

In August 2015, Mr. D. visited a United States Department of Veterans Affairs ("VA")

clinic in the Philippines and complained about pain in both of his knees.  *See* AR 328, 339.  An

examination indicated osteochondroma in his left fibula and bilateral patellar spurs.  *See* AR 337.

Several months later Mr. D. was examined by an orthosurgeon consultant, Dr. Alfredo G. Calado

("Dr. Calado"), who found that the osteochondroma in Mr. D's fibula was "unchanged in size

and appearance" and that "[t]he patellar spurs on both sides [were] stable."  AR 322.  In a

subsequent visit, Dr. Calado found "good unaided ambulation," "good transfers," and "good

functional [range of motion] [in] both knees."  AR 338.

In March 2017, Mr. D. complained of a "flareup" of pain in his knees that was triggered

"by going up steps daily in his school," and Dr. Calado noted that the flareup was not relieved

with ibuprofen.  AR 380.  Dr. Calado also noted "good brisk unaided ambulation," "good

transfers up and down exam table from sitting to standing repetitively," and "good functional

[range of motion] [in] both knees."  *Id.*  A month later, Mr. D. was diagnosed with degenerative

joint disease in both knees, referred for physical therapy, and told that he "[m]ay need a cane

when traveling/walking long distances."  AR 378–79.  In June 2017, Dr. Calado noted that Mr.

D. had crepitus in both of his knees, but that both knees still had functional range of motion.  *See*

AR 373.

In January 2018, Mr. D. visited Dr. Calado and reported that the pain in both knees

persisted and was especially acute early in the morning and when he used stairs.  *See* AR 370.

Dr. Calado remarked that Mr. D. continued to have good unaided ambulation and good transfers,

with no signs of "effusion, swelling, inflammation, tenderness, [or] instability [in] both knees,"

and that the crepitus was persistent in the right knee more so than the left.  *Id.*  Later that year,

Mr. D.'s primary care physician Dr. Linda Roberto ("Dr. Roberto") examined Mr. D. and noted

that he continued experiencing pain in both knees.  *See* AR 419–20, 428.

In August 2019, Dr. Roberto completed a Physical Medical Source Statement for the SSA, in which she identified that Mr. D. had crepitus in his knees and found that his knee pain interfered with his attention and concentration for up to half of each day. *See* AR 473–76. Dr. Roberto found that Mr. D. was capable of low stress jobs; capable of engaging in occasional standing or walking without the use of a cane or other assistive device; capable of walking effectively unassisted to perform daily activities (including traveling to and from the workplace); capable of performing sedentary work; and capable of sitting for about four hours per day and walking for less than two hours per day within an eight-hour workday. *See* AR 474–76. Dr. Roberto also noted that Mr. D. required a job that could permit him to change positions at will from sitting, standing, or walking; needed to change positions every ten-to-twenty minutes; and needed to elevate his feet or legs fairly high for fifty percent of the day. *See* AR 475.

Several state consultants examined Mr. D.'s medical records and provided recommendations regarding his limitations. In July 2016, Dr. H. Ramsey determined that Mr. D. was not disabled, was capable of performing "light exertional work," and could perform his past relevant work. AR 62–70. In May 2018, Dr. R. Titanji examined Mr. D.'s records and found that he could not perform his past relevant work but was capable of performing other light work with restrictions on climbing, stooping, bending, and crouching. *See* AR 72–82. In March 2019, Dr. J. McWilliams reviewed the record and found that Mr. D. had some postural limitations but was capable of performing his past relevant work, occasionally lifting fifty pounds, frequently lifting twenty-five pounds, standing or walking for six hours of a eight hour workday, and sitting for more than six hours. *See* AR 84–96.

### III.   Testimony at the Administrative Hearing

The administrative hearing for Mr. D.'s disability claim was held on June 4, 2020, and Mr. D. and vocational expert Dr. Lanelle Yamane ("Dr. Yamane") testified.  *See* AR 42–43, 57. Mr. D. testified first, explaining that he was capable of walking continuously for approximately one block, standing for ten to fifteen minutes at a time, and sitting for approximately twenty minutes before needing to lay down.  *See* AR 50–51.  He stated that he alleviated the pain in his knees by placing a pillow underneath his knees when sitting in his bed, and explained that sitting elsewhere was difficult unless he could elevate his knees by placing his feet on a desk or table. *See* AR 53.

Mr. D. also described his capacity for personal care and daily activities.  *See* AR 54–56. He testified that he lived with the mother of his eight-year-old daughter and that "[s]he does all the shopping, she does all the cooking, and she brings me stuff when I need it, so I don't have to go down the stairs."  AR 54.  Mr. D. explained that, during the day, he generally sat or lay in bed, played video games, watched television, played with his dogs, only left the house to visit the VA clinic, and did none of the household shopping.  *See* AR 55.  He testified that he was capable of personal care and hygiene, but he required prompting and urging from his daughter's mother. *See* AR 56.

Dr. Yamane testified next.  ALJ Pease asked Dr. Yamane what type of work would be available to a person of Mr. D.'s age, education level, work history, and skills; who "could lift, carry, push or pull ten pounds occasionally and less than ten pounds frequently," and also  "stand and walk for two out of eight [hours]; sit for six out of eight [hours]; [] occasionally climb stairs and ramps; [and] could occasionally balance, stoop, kneel or crouch, but no crawling, . . . ladders, ropes or scaffolds."  AR 57–58.  Dr. Yamane testified that such an individual could not

perform any of Mr. D.'s past work, "primarily due to the lifting and carrying and walking and standing restriction," but could perform unskilled sedentary jobs, such as a document preparer, nut sorter, food and beverage order clerk, or charge account clerk. AR 57–59. Dr. Yamane also testified that no jobs would be available to a person who would be "off task" for fifteen-to-twenty percent of the day. AR 59–60.

## IV.   The Commissioner's Decision

ALJ Pease issued his decision on June 23, 2020, finding that Mr. D. was not disabled and accordingly not entitled to benefits under the Act. *See* AR 36. At step one of ALJ Pease's disability determination, he found that Mr. D. had not engaged in substantial gainful activity since his onset date. *See* AR 29. At step two, he found that Mr. D. had the severe impairments of bilateral knee osteoarthritis and degenerative joint disease. *Id.* ALJ Pease noted that Mr. D. suffered from other physical and mental impairments—but those impairments were not severe. *Id.* At step three, ALJ Pease found that Mr. D.'s impairments did not meet or equal an impairment in the Commissioner's Listings. *See* AR 30. ALJ Pease then determined that Mr. D. had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), but that such work could not exceed the following limitations:

> lift, carry, push or pull ten pounds occasionally and less than ten pounds frequently; stand and walk for two hours out of eight; sit for six hours out of eight; occasionally climb stairs and ramps; occasionally balance, stoop, kneel, and crouch; no crawling; and no ladders, ropes, or scaffolds.

AR 31.

ALJ Pease then used Mr. D.'s RFC to determine at step four that he was unable to perform any of his past relevant work, but found at step five that a significant number of jobs existed in the national economy that he could perform. *See* AR 34–35. The Appeals Counsel denied Mr. D.'s request for review, making ALJ Pease's decision the Commissioner's final

decision.  *See* AR 6.  Mr. D. has now asked that this Court review the decision pursuant to 42

U.S.C. § 405(g).

## LEGAL STANDARD

Federal district courts have the authority "to enter, upon the pleadings and transcript of

the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of

Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).

Remand is appropriate "if the record is incomplete, or if the ALJ's reasoning is not fully

articulated."  *Warfield v. Colvin*, 134 F. Supp. 3d 11, 16 (D.D.C. 2015) (citing *Ademakinwa v.*

*Astrue*, 696 F. Supp. 2d 107, 111 (D.D.C. 2010)).  Reversal is appropriate when "the record in

the case has been thoroughly developed, and a rehearing would merely function to delay the

award of benefits."  *Martin v. Apfel*, 118 F. Supp. 2d 9, 18 (D.D.C. 2000).

A reviewing court must uphold the Commissioner's decision "if it is based on substantial

evidence in the record and correctly applies the relevant legal standards."  *Butler*, 353 F.3d at

999; 42 U.S.C. § 405(g).  "Substantial-evidence review is highly deferential to the agency fact-

finder."  *Rossello v. Astrue*, 529 F.3d 1181, 1185 (D.C. Cir. 2008).  This standard only requires

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Butler*, 353 F.3d at 999 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  The movant

must provide "more than a scintilla [of evidence], but [the standard] can be satisfied by

something less than a preponderance of the evidence."  *Fla. Mun. Power Agency v. FERC*, 315

F.3d 362, 366 (D.C. Cir. 2003) (quoting *FPL Energy Me. Hydro LLC v. FERC*, 287 F.3d 1151,

1160 (D.C. Cir. 2002)).  "The plaintiff bears the burden of demonstrating that the

Commissioner's decision [was] not based on substantial evidence or that incorrect legal

standards were applied." *Feenster v. Colvin*, 220 F. Supp. 3d 123, 128 (D.D.C. 2016) (alteration

in original) (internal quotation marks and citations omitted).

A reviewing court must "carefully scrutinize" the entire record when determining

whether the Commissioner's decision is supported by substantial evidence. *Butler*, 353 F.3d at

999.  Thus, the inquiry focuses on whether the ALJ "has analyzed all evidence and has

sufficiently explained the weight he has given to obviously probative exhibits." *Crawford v.*

*Barnhart*, 556 F. Supp. 2d 49, 52 (D.D.C. 2008) (quoting *Butler*, 353 F.3d at 999).  Courts,

however, "may not reweigh the evidence and replace the [Commissioner's] judgment regarding

the weight of the evidence with [their] own." *Cunningham v. Colvin*, 46 F. Supp. 3d 26, 32

(D.D.C. 2014) (quoting *Brown v. Barnhart*, 370 F. Supp. 2d 286, 288 (D.D.C. 2005)).

## DISCUSSION

Mr. D. challenges ALJ Pease's decision that he was not disabled under the Act.  He

contends that ALJ Pease erred by: (1) ignoring the treating physician rule and not giving

adequate weight to Dr. Roberto's opinion regarding Mr. D.'s limitations; (2) failing to develop

the factual record regarding Mr. D.'s testimony about his limitations; and (3) not considering Mr.

D.'s difficulties with commuting to work in evaluating whether sufficient jobs existed in the

national economy that Mr. D. was capable of performing. *See generally* Pl. Mem.  The

Commissioner responds that ALJ Pease: (1) properly weighed all medical evidence and opinions;

(2) adequately considered Mr. D.'s testimony about his limitations; and (3) was not required to

consider Mr. D.'s reported difficulties with commuting. *See generally* Def. Mem.  The Court

will evaluate each of these three issues in turn.

## I.    ALJ Pease Afforded Appropriate Weight to Mr. D.'s Treating Physician's Opinion

Mr. D. argues that ALJ Pease ignored the treating physician rule and disregarded Dr. Roberto's medical opinion.  *See* Pl. Mem. at \*4–5.  He argues that ALJ Pease should have given controlling weight to the opinions of Dr. Roberto—who treated Mr. D. regularly for two years— that Mr. D. had crepitus and that his symptoms would distract him up to half of every day.  *Id.* at \*4.  Mr. D. further argues that ALJ Pease provided "no justification for deferring to agency consultants" over Dr. Roberto's analysis, thus contradicting "the spirit of the treating physician rule."  *Id* at \*5.  The Commissioner responds that the treating physician rule is not applicable to this case due to changes to the SSA's regulations, and that ALJ Pease properly evaluated the relevant medical opinions under the SSA's new regulatory framework.  *See* Def. Mem. at 13. The Court will first consider whether the treating physician rule applies to this case, finding that it does not, and will next consider whether ALJ Pease properly weighed Mr. D.'s treating physician's opinion.

### A.  The Treating Physician Rule Does Not Apply to This Case

On January 18, 2017, the SSA published updated rules in *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01 (2017).  These revisions repealed the "treating physician rule," which provided that a treating physician's report is "binding on the fact-finder unless contradicted by substantial evidence."  *Butler*, 353 F.3d at 1003 (articulating the rule in the D.C. Circuit).  The revised regulations state that ALJ's should consider the "persuasiveness" of opinions from all medical sources, rather than giving "any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from [claimant's] medical sources."  20 C.F.R. § 404.1520c(a).  The revised regulations apply to social security claims filed on or after March 27, 2017.  *Id.* § 404.1520c.

Separate from the SSA's regulations, "[t]he D.C. Circuit had 'a treating physician rule of [its] own,' which similarly required the fact-finder to give a treating physician's opinion controlling weight 'unless contradicted by substantial evidence.'"  *David W. v. Kijakazi*, No. 21-cv-3370, 2023 WL 5035935, at *10 (D.D.C. Aug. 8, 2023) (quoting *Butler*, 353 F.3d at 1003) (further quotation marks and citation omitted).  But while the D.C. Circuit has not yet spoken on whether its treating physician rule survived the revised regulations, other courts in this District have applied the revised regulations.  *See Tiana O. v. Kijakazi*, No. 20-cv-2051, 2023 WL 5348747, at *6 (D.D.C. Aug. 21, 2023) ("Plaintiff's argument that the independent treating physician rule . . . still applies despite Social Security's revised regulations is incorrect.") (internal quotation marks and citation omitted); *Bullock v. Kijakazi*, No. 20-cv-1764, 2023 WL 5023380, at *5 (D.D.C. Aug. 8, 2023) (finding that the treating physician rule no longer applies to cases filed on or after March 27, 2017).  The treating physician rule does not apply here because Mr. D. applied for social security benefits on February 13, 2018—after the new regulations went into effect.  *See Emery P. v. Kijakazi*, No. 21-cv-3147, 2023 WL 5973991, at *8 (D.D.C. Sept. 14, 2023) ("For claims filed after March 27, 2017, ALJs are not required to defer or give specific evidentiary weight to medical opinions from claimants' treating providers.") (citing 20 C.F.R. 404.1520c(a)).  Accordingly, the Court will proceed by applying the revised regulations to determine whether the ALJ properly weighed the opinion of Mr. D.'s treating physician.

**B.  ALJ Pease Properly Weighed the Opinion of Mr. D.'s Treating Physician**

"Under the revised regulations . . . an ALJ shall not give specific evidentiary weight to any medical opinion, 'including those from [the claimant's] medical sources.'"  *Emery P.*, 2023 WL 5973991, at *8 (quoting 20 C.F.R. §§ 404.1520c(a), 416.920c) (alteration in original).

"Instead, the ALJ must decide how persuasive she finds all medical opinions according to five factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant; (4) specialization; and (5) other factors that tend to support or contradict a medical opinion.'" *Tiana O.*, 2023 WL 5348747, at *6 (citing 20 C.F.R. §§ 404.1520c(b)–(c)) (quotation omitted).  "The most important factors in the persuasiveness analysis are (1) supportability—that is, how well the medical source supported the opinion with objective medical evidence and supporting explanations—and (2) the consistency of the opinion with other evidence in the record." *David W.*, 2023 WL 5035935, at *10 (citing 20 C.F.R. §§ 416.920c(b)(2), 416.920c(c)(1)–(2)) (quotation omitted).  "[T]here is no specific format required for addressing supportability and consistency, and those terms need not be used in the opinion, provided that there is sufficient explanation for a reviewing court to determine that the ALJ analyzed those factors." *Id.* at *11.

Here, ALJ Pease appropriately weighed the opinion of Mr. D.'s treating physician Dr. Roberta.  At the outset, he acknowledged that he was not permitted to give any specific evidentiary weight to any medical opinion.  *See* AR 32.  He evaluated all of the medical evidence and found that Mr. D. could perform sedentary work, with certain additional restrictions.  *See* AR 31–33.  He gave partial weight to Dr. Roberto's assessment "to the extent consistent with the reduced sedentary RFC limitations" that he found appropriate.  *Id.*  But he also found that Dr. Roberto's findings of "greater limitations are not well supported by the objective" medical evidence, pointing to evidence of "good, brisk unaided ambulation with good transfers; no signs of effusion, swelling, inflammation, tenderness, redness or instability of both knees; and good functional range of motion of both knees."  AR 33.  This analysis squarely addresses the consistency factor, as it determines that Dr. Roberto's assessment was not consistent with other

evidence in the record.  It also addresses the supportability factor, in that it notes that Dr.

Roberto's opinion was not well-supported by objective medical evidence.

Mr. D. argues that Dr. Roberto's analysis should be "binding on the fact-finder" because

ALJ Pease did not provide "justification for deferring to agency consultants."  Pl. Mem. at *4–5

(quoting *Butler*, 353 F.3d at 1003).  But ALJ Pease adequately described the agency consultants'

opinions and discussed the extent to which those opinions were supported by the medical record.

*See* AR 33.  Specifically, ALJ Pease found that the initial consultant's opinion that "[Mr. D.]

could perform light work, occasional postural activities, except frequent balancing and

stooping," was not supported by the medical evidence and that Mr. D.'s limitations were more

pronounced.  *Id.*  He similarly found that the opinions of agency consultants that "[Mr. D.] could

perform medium work and frequent postural activities, except balancing and stooping," were not

supported by the medical evidence.  *Id.*  Here too ALJ Pease's analysis addresses the

supportability and consistency factors.  He did not merely disregard Dr. Roberto's opinion in

favor of another medical opinion—he critically analyzed each opinion, finding faults with both,

and arrived at a middle ground in determining Mr. D.'s RFC.  Accordingly, the Court finds that

substantial evidence supports the ALJ's decision to afford some—but not controlling—weight to

Dr. Roberto's opinion.[6]

---

[6] Mr. D. also argues that ALJ Pease "ignored the finding of crepitus" in his determination of Mr. D.'s RFC.  Pl. Mem. at *5.  But ALJ Pease explicitly discussed Mr. D.'s crepitus at multiple points in his decision, pointing out that "October 2015 to January 2018 exams showed crepitus on the right greater than the left, mild to moderate on both knees, and positive Apley's Test," and "January through November 2018 treatment notes showed crepitus of the left shoulder and bilateral knee joints."  AR 32.  When ALJ Pease found the agency consultant's opinion not fully persuasive, one reason was that the "evidence of crepitus" indicated more significant limitations than those found by the consultant.  AR 33.  This argument thus has no merit.

II.     **ALJ Pease Erred When He Misstated the Evidence of Mr. D.'s Personal Care and
Daily Activity Limitations, But the Error Was Harmless**

Mr. D. argues that ALJ Pease misstated the evidence when he found that Mr. D. did not

report any limitations related to his personal care and daily activities.  *See* Pl. Mem. at *5.  Mr.

D. points out that ALJ Pease concluded that Mr. D. "reported no problem with personal care and

activities including cleaning and shopping in stores," when Mr. D. in fact testified about his

limitations in those areas.  *Id.* (quoting AR 32).  The Commissioner responds that Mr. D.'s

testimony regarding personal care and daily activities was inconsistent with the evidence in the

record, and even if ALJ Pease did err in not crediting Mr. D.'s testimony, that error was harmless

because the ALJ relied on other substantial evidence in reaching his conclusion that Mr. D. was

not disabled.  *See* Def. Mem. at 19–20.

A.   **ALJ Pease Erred by Misstating the Evidence of Mr. D.'s Personal Care
Limitations**

At the administrative hearing, Mr. D. testified about the limiting effects of his symptoms.

He testified that he could walk continuously for approximately one block; stand for ten to fifteen

minutes at a time; and sit for approximately twenty minutes before needing to lay down.  *See* AR

50–51.  He also testified that his daughter's mother did all of the household activities, such as

shopping and cooking, and that she cared for him all day and encouraged him to take care of his

personal hygiene.  *See* AR 45, 56.  ALJ Pease found that Mr. D.'s statements about the limiting

effects of his symptoms were not consistent with the evidence in the record—for two distinct

reasons.  First, ALJ Pease found that Mr. D.'s statements were inconsistent, because while he

reported difficulty walking, standing, and sitting, he reported no difficulties with personal care,

cleaning, and shopping.  *See* AR 32.  Second, ALJ Pease found that the medical evidence in the

record did not support Mr. D.'s statements about his limitations.  *See* AR 32–33.  As discussed

below, ALJ Pease erred in his first reason for discrediting Mr. D.'s subjective complaints, but that error was harmless because of his second reason.

In determining "whether a claimant's symptoms affect h[is] ability to perform basic work activities," the ALJ must evaluate the record evidence under a two-step process. *Callaway v. Berryhill*, 292 F. Supp. 3d 289, 297 (D.D.C. 2018) (citing 20 C.F.R. § 404.1529). First, the claimant must show "medical signs or laboratory" findings evidencing a "medically determinable impairment that could reasonably be expected to produce" the alleged pain. 20 C.F.R. §§ 404.1529(a)–(b), 416.929(a)–(b). Second, the ALJ must assess the intensity and persistence of a claimant's symptoms, such as pain, and determine whether these symptoms impair the claimant's ability to work. *Id.* §§ 404.1529(c)(1), 416.929(c). At the second step, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Soc. Sec. Ruling 16-3p Titles II & XVI: Evaluation of Symptoms in Disability Claims*, SSR 16-3P, at *4 (S.S.A. Oct. 25, 2017). The ALJ must determine "whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [the claimant's] statements and the rest of the evidence." *Butler*, 353 F.3d at 1,004 (quoting 20 C.F.R. § 404.1529(c)(4)).

ALJ Pease erred at the second step, when evaluating the intensity and persistence of Mr. D.'s symptoms, by failing to acknowledge any of Mr. D.'s testimony regarding his personal care and daily activities, and then incorrectly stating that Mr. D. did not report any issues with those activities. *See Contreras v. Comm'r of Soc. Sec.*, 239 F. Supp. 3d 203, 209 (D.D.C. 2017) (the ALJ should include in his decision "any discussion of the [claimant's] contentions or testimony

regarding his activities of daily living.").  This error was compounded when ALJ Pease then relied on this absence of limitations in personal care to find that Mr. D.'s statements about the limiting effects of his symptoms were inconsistent—which was akin to making a negative credibility determination.

Because it was arrived at through the factual error described above, ALJ Pease's negative credibility determination was baseless.  "When evaluating [a] Plaintiff's subjective claims regarding [his] symptoms, the ALJ's decision 'must contain specific reasons for [a] finding on credibility.'"  *Colter v. Kijakazi*, No. 20-cv-0632, 2022 WL 715218, at *14 (D.D.C. Mar. 10, 2022) (quoting *Butler*, 353 F.3d at 1005) (further citation omitted).  Those findings must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight." *Id.*  "When evaluating credibility determinations, a 'reviewing court will only intercede where an ALJ fails to articulate a rational explanation for his or her finding.'"  *Id.* (quoting *Grant*, 857 F. Supp. 2d at 156) (further citation omitted).  No such rational explanation exists here, where ALJ Pease plainly misstated the factual record, which led to his faulty negative creditability determination.[7]

**B.  The Error Was Harmless Because Substantial Evidence Supported ALJ Pease's Finding That Mr. D. Was Not Disabled**

"[A]n error is harmless when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination."  *Davis*, 272 F. Supp. 3d at 180

---

[7] The Court notes that Mr. D. completed a "Function Report" in which he indicated that he had no limitations related to personal care, that he was is capable of cleaning without help, and that he shopped for food one per week.  AR 215–17.  While this evidence might provide a rational reason for determining that Mr. D. was not limited in personal care, it does not provide a rational reason for finding that Mr. D. reported no problems with personal care, and thus testified inconsistently, when he specifically testified that he did have such limitations.

(internal quotation marks and citation omitted).  "[T]he burden of showing that an error is harmful falls upon the party attacking the agency's determination."  *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

Although ALJ Pease erred in disregarding Mr. D.'s testimony regarding his limitations with daily activities, ALJ Pease did not entirely disregard Mr. D.'s subjective complaints. Instead, he noted that Mr. D. testified about his difficulties walking, standing, and sitting.  *See* AR 31.  He described Mr. D.'s testimony "that he spends a lot of his time lying in his bed," and "that he could lift no more than 5–10 pounds."  *Id.*  ALJ Pease then thoroughly explained why Mr. D.'s subjective complaints were inconsistent with the medical record.  *See* AR 32–33.  ALJ Pease referenced 2017 and 2018 x-rays that showed that Mr. D.'s degenerative joint disease had not worsened, and pointed to medical records discussing Mr. D.'s "unaided ambulation with good transfers, and no signs of effusion, swelling, inflammation, tenderness, redness, or instability of both knees."  AR 32.  He also highlighted findings that Mr. D. exhibited a decrease in sensation in a part of his right foot, but otherwise his sensation was intact.  *See* AR 32.  These medical records provide substantial evidence to support a finding that Mr. D.'s subjective complaints were inconsistent with the record, and ALJ Pease's error regarding Mr. D.'s testimony was thus inconsequential to his ultimate findings that Mr. D. was not disabled.

Courts routinely uphold ALJ determinations that a claimant is not disabled when the ALJ finds substantial evidence in the record that the claimant is not disabled that conflicts with the claimant's subjective complaints.  *See Colter*, 2022 WL 715218, at *15 (upholding the ALJ's nondisability determination, in part because "the ALJ explained that the objective medical evidence was inconsistent with Plaintiff's subjective complaints"); *Darlene M. v. Kijakazi*, No. 20-cv-1817, 2021 WL 6841641, at *21 (D.D.C. Sept. 3, 2021) (finding no error when "the ALJ

provided specific, rational reasons for discounting [the plaintiff's] testimony."); *Melanie A. S.*, 2022 WL 1721196, at *16 (D.D.C. May 12, 2022) (finding that the ALJ appropriately determined that the claimant's subjective complaints were not supported by substantial evidence when the ALJ thoroughly described contrary medical evidence in the record).  Failure to consider all of a claimant's subjective complaints is harmless error when the ALJ's finding is supported by substantial evidence.  *Davis*, 272 F. Supp. 3d at 172–73 ("[T]he ALJ's failure to specifically account for" all of the claimant's limitations was harmless "when the ALJ offered an alternative justification for [the] decision" through "substantial medical and other evidence of record."); *see also Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 507 (6th Cir. 2013) ("[E]ven if an ALJ's adverse credibility determination is based partially on invalid reasons, harmless error analysis applies to the determination, and the ALJ's decision will be upheld as long as substantial evidence remains to support it.").

Accordingly, the Court finds that, although ALJ Pease misstated the factual record, which led to a faulty negative credibility determination, that error was harmless because ALJ Pease found alternative substantial evidence, through Mr. D.'s medical records, that Mr. D.'s subjective complaints were not consistent with the record and that he was not disabled.

### III. ALJ Pease Was Not Required to Explicitly Consider Whether Mr. D.'s Impairments Impacted His Ability to Commute to Work

At step five of ALJ Pease's disability determination, he found that sufficient jobs existed in the national economy that Mr. D. could perform.  *See* AR 35.  He relied on the testimony of vocational expert Dr. Yamane, who concluded that an individual with Mr. D.'s education level, vocational background, and proposed RFC could perform the requirements of several unskilled sedentary occupations—including document preparer, nut sorter, food and beverage order clerk, and charge account clerk.  *See* AR 35, 57–59.  ALJ Pease considered Mr. D.'s age, education,

work experience, and RFC, but did not explicitly consider the impact of Mr. D.'s impairments on his ability to commute to work.  *See* AR 35, 58–60.

Mr. D. notes that each of the jobs proposed by Ms. Yamane would require him to commute to work and claims that he is unable to do so because of his physical limitations.  *See* Pl. Mem. at *6.  He argues that ALJ Pease erred in not considering Mr. D.'s inability to commute to work when he found that there were sufficient jobs in the national economy that Mr. D. could perform.  *Id.*  The Commissioner responds that "[t]he Act does not define disability as the inability to get to the workplace," and a lack of transportation is not a factor an ALJ needs to consider when assessing whether a claimant can perform other work that exists in the economy. Def. Mem. at 21.

The SSA's regulations do not explicitly require an ALJ to evaluate whether a claimant is capable of commuting to work at step five of the disability determination.  Instead, the ALJ must consider the claimant's age, education, vocational background, and RFC to determine whether there is sufficient work in the national economy that the claimant is capable of performing.  *See* 20 C.F.R. § 404.1569(a).  Courts in this Circuit have not discussed the extent to which an ALJ should consider a claimant's capacity to commute, but courts in other circuits have addressed this issue.  In *Lopez Diaz v. Sec'y of Health, Ed. & Welfare*, 585 F.2d 1137, 1140 (1st Cir. 1978), the court explained that whether the ALJ may consider a claimant's ability to commute hinges on a distinction between difficulties extrinsic to the claimant's physical impairments, and difficulties intrinsic to his impairments.  The length or expense of a commute, or availability of transportation, for example, are factors extrinsic to a claimant's impairment, and should not be considered.  *Id.*  But when a claimant's difficulties commuting stem directly from his impairment, in that the impairment "render[s] it impossible, or extremely difficult, for him to

physically move his body from home to work," this may bear on the disability determination. *Id.*
The court noted, however, that "it will be an unusual case in which such a showing can be
made." *Id.* at 1142.

Other circuits have adopted the extrinsic/intrinsic analysis developed in *Lopez Diaz* in
finding that a claimant's ability to commute to work is a relevant factor that an ALJ may, but is
not required, to consider. *See, e.g.*, *Harmon v. Apfel*, 168 F.3d 289, 292 (6th Cir. 1999)
("[W]hile plaintiff is correct when she contends that travel to and from work is a factor to be
considered," only pertinent to the disability determination are "intrinsic factors concerning
plaintiff's condition, not extrinsic factors such as where plaintiff has chosen to live in relation to
any identified regional jobs."); *O'Neal v. Comm'r of Soc. Sec.*, 799 F. App'x 313, 316 (6th Cir.
2020) (listing factors that the ALJ may consider when determining whether a significant number
of available jobs exist in the national economy, including "the distance claimant is capable of
traveling to engage in the assigned work," but clarifying that "these factors are suggestions
only—the ALJ need not explicitly consider each factor") (internal quotation marks, citation, and
alteration omitted); *New v. Colvin*, No. 3:13-cv-0094, 2014 WL 4926347, at *9 (D. Alaska Sept.
30, 2014), *aff'd sub nom. New v. Berryhill*, 685 F. App'x 607 (9th Cir. 2017) (applying the *Lopez
Diaz* framework); *Bradley W. v. Comm'r of Soc. Sec.*, No. 5:19-cv-1217, 2020 WL 5848833, at
*10 (N.D.N.Y. Oct. 1, 2020) ("The ALJ also correctly noted that plaintiff's *lack of* transportation
was not relevant for purposes of Social Security disability.") (emphasis added); *Velasquez v.
Barnhart*, No. 04-cv-9017, 2006 WL 3431190, at *3–4 (S.D.N.Y. Nov. 29, 2006) (finding that a
claimant's ability to use public transportation was relevant to the disability determination, and

remanding when the ALJ's initial decision reflected his belief that he was *not permitted* to consider this factor).[8]

Mr. D.'s arguments fall on both sides of the extrinsic/intrinsic framework.  On the one hand, he argues that ALJ Pease erred because it was "unreasonable to assume that Mr. D[] could get a ride [to work] from his daughter's mother every[ ]day."  Pl. Mem. at *6.  Whether or not Mr. D. is able to procure transportation support from his social network is a matter extrinsic to his impairments, and not a factor relevant to the SSA's disability determination.  But Mr. D. also argues that he is not capable of commuting because of his physical limitations.  *Id.* (regarding Mr. D.'s inability to commute, noting that he "cannot even shop for groceries himself and only goes downstairs two times per day, because of his disability.  However the ALJ completely disregarded this").

While ALJ Pease did not explicitly consider Mr. D.'s ability to commute when determining whether Mr. D. could perform available jobs in the national economy, he was not required to do so.  He considered Mr. D.'s RFC, which he arrived at through a comprehensive discussion of the medical evidence in the record, and which established that Mr. D. had the capacity to sit for six hours out of an eight hour workday, and stand and walk for two hours out of eight.  *See* AR 35.  Substantial evidence thus existed in the record to support a finding that Mr. D. was capable of performing jobs that existed in the national economy, and that he was capable

---

[8] Some courts have indicated that a claimant's ability to commute is not relevant at all to the disability determination.  *See, e.g.*, *Erica U. v. Berryhill*, No. 18-cv-5307, 2018 WL 6617261, at *4 (W.D. Wash. Dec. 18, 2018) ("The Social Security regulations do not take into account a claimant's ability to get to and from work").  Other courts have emphasized the importance of this factor when it is explicitly raised at the administrative level.  *See, e.g.*, *Rivera v. Sullivan*, 771 F. Supp. 1339, 1356 (S.D.N.Y. 1991) (remanding when the ALJ did not consider witness testimony and expert opinion that the claimant was not capable of using public transportation alone).

of commuting to those jobs.[9]  *See J.R.G. v. Saul*, No. 19-cv-2706, 2020 WL 4698443, at *7 (D. Kan. Aug. 13, 2020) (at step four, finding that the ALJ did not need to explicitly consider the claimant's ability to commute because "substantial evidence on the record as a whole sustains the Commissioner's decision.").

Accordingly, the Court finds that ALJ Pease did not err when he did not explicitly consider Mr. D.'s limitations in commuting to his hypothetical place of work when determining whether there was sufficient work in the national economy that Mr. D. was capable of performing.

## CONCLUSION AND ORDER

For the preceding reasons, the Court **DENIES** Mr. D.'s Motion for Judgment of Reversal and **GRANTS** the Commissioner's Motion for Judgment of Affirmance.

Date: October 6, 2023

_____
ROBIN M. MERIWEATHER
UNITED STATES MAGISTRATE JUDGE

---

[9] The Court notes that, were it the case that Mr. D.'s RFC more plainly called into question his ability to commute to work, or that this argument was more explicitly presented to ALJ Pease for consideration, the ALJ may have been required to explicitly consider this factor.